

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

July 21, 1995

Mr. Ray Farabee
Vice Chancellor and General Counsel
The University of Texas System
201 West Seventh Street
Austin, Texas 78701-2981

Opinion No. DM-359

Re: Eligibility of certain individuals, enrolled as students at the University of Texas at Austin, to claim exemption from payment of various fees and charges (RQ-787)

Dear Mr. Farabee:

You have requested our opinion regarding the eligibility of certain individuals, enrolled as students at the University of Texas at Austin, to claim exemption from payment of various fees and charges. Section 54.203 of the Education Code provides, in pertinent part:

> (a) The governing board of each institution of higher education shall exempt the following persons from the payment of *all dues, fees, and charges, including fees for correspondence courses but excluding property deposit fees, student services fees, and any fees or charges for lodging, board, or clothing,* provided the persons seeking the exemptions demonstrate financial need as defined by the Texas Higher Education Coordinating Board,[1] were citizens of Texas at the time they entered the services indicated, and have resided in Texas for at least the period of 12 months before the date of registration:
>
> . . . .
>
> (3) all honorably discharged men and women of the armed forces of the United States who served during the national emergency which began on June 27, 1950, and which is referred to as the Korean War; and
>
> (4) all persons who were honorably discharged from the armed forces of the United States after serving on active military

---

[1] Senate Bill 114, enacted by the current session of the legislature and signed into law by Governor Bush on May 23, 1995, removes the financial need requirement from section 54.203. *See* Act of May 9, 1995, 74th Leg., R.S., ch. 159, § 1, *available in* Westlaw, Tx-Legis data base (copies available at House Document Distribution Office). The amendment will take effect beginning with the 1995 fall semester. *Id.* § 2.

duty, excluding training, for more than 180 days and who served a portion of their active duty during:[2] [Emphasis and footnotes added.]

> (A) the cold war which began on the date of the termination of the national emergency cited in Subdivision (3) of this subsection;

> (B) the Vietnam era which began on December 21, 1961, and ended on May 5, 1975;

> (C) the Grenada and Lebanon era which began on August 24, 1982, and ended on July 31, 1984;

> (D) the Panama era which began on December 20, 1989, and ended on January 21, 1990;

You suggest that the term "Cold War" referred to above in subdivision (4) refers to "the time period between the Korean conflict and the beginning of the Vietnam Era (1/31/55 to 8/5/64)" and that "[e]ven though the provisions of Section 54.203 fail to provide a specific date for the 'Cold War,' apparently it is now conceded by all public officials that the Cold War period has ended."

Subdivision (4) of subsection 54.203(a) was first enacted, in a slightly different form, in 1967. Act of May 25, 1967, 60th Leg., R.S., ch. 506, § 1, 1967 Tex. Gen. Laws 1141, 1142. Although section 54.203 was amended as recently as 1993, Act of May 14, 1993, 73d Leg., R.S., ch. 435, § 1(a)(1), 1993 Tex. Gen. Laws 1744, 1744, the legislature has never specified a termination date for the Cold War. Had the Cold War ended on August 5, 1964, as you suggest, surely the legislature would have noted that fact in its 1993 amendment of section 54.203.

Neither is federal law useful in establishing such a date. A brief submitted to us by Ms. Mary Lou Keener, general counsel for the federal Department of Veterans Affairs, indicates that title 38 of the United States Code, "a codification of veterans' benefits laws primarily administered by the Department," does not even use the term "Cold War."[3]

---

[2] The "national emergency" declared by President Truman on June 27, 1950, in response to the invasion of the Republic of Korea ("South Korea") by forces of the Democratic People's Republic of Korea ("North Korea"), was not officially terminated until January 31, 1955, even though an armistice had been agreed upon in June, 1953. *38 U.S.C. § 101. See infra note 3.*

[3] Title 38, section 101, of the United States Code recognizes the following periods of wartime: (1) Spanish-American War: April 21, 1898, to July 4, 1902; (2) Mexican Border Period: May 9, 1916, to April 5, 1917; (3) World War I: April 6, 1917, to November 11, 1918; (4) World War II: December 7, 1941, to December 31, 1946; (5) Korean Conflict: June 27, 1950, to January 31, 1955; (6) Vietnam Era: August 5, 1964, to May 7, 1975; (7) Persian Gulf War: August 2, 1990, to a yet-to-be-determined date. Thus for purposes of federal veterans benefits, military service after May 7, 1975, and before August 2, 1990, a period of more than 15 years, is not included.

Certain recent federal laws seem to *imply* that the Cold War has ended, without naming any particular date for its termination. For instance, in the Defense Conversion, Reinvestment, and Transition Assistance Act of 1992, Pub. L. No. 102-484, 1992 U.S.C.C.A.N. (106 Stat.) 2658, enacted on October 23, 1992, Congress made "the following findings":

> (1) the collapse of communism in Eastern Europe and the dissolution of the Soviet Union have fundamentally changed the military threat that formed the basis for the national security policy of the United States since the end of World War II.
>
> . . . .
>
> (3) As the United States proceeds with the *post-Cold War* defense build-down, the Nation must recognize and address the impact of reduced defense spending on the military personnel, civilian employees, and defense industry workers who have been the foundation of the national defense policies of the United States.

*Id.* § 4101, at 2658-59 (emphasis added). In the same statute, Congress used the following language:

> (1) On February 1, 1992, the President of the United States and the President of the Russian Federation agreed in a Joint Statement that 'Russia and the United States do not regard each other as potential adversaries' and stated further that, 'We will work to remove any remnants of *cold war* hostility, including taking steps to reduce our strategic arsenals.'

*Id.* § 1321, at 2549 (emphasis added).

These statutes, while apparently demonstrating that Congress, as of October, 1992, believed the Cold War to be a *past* event, do not specifically so state; and, furthermore, they recognize the possibility of lingering "remnants of Cold War hostility."[4] *Id.* In any event, these pronouncements fail utterly to designate a precise date for the termination of the Cold War, and thus may not properly be cited as evidence of such a

---

[4]Section 1031(e)(2) of Public Law 103-337, the National Defense Authorization Act for Fiscal Year 1995, defines *"unaccounted-for Cold War POW/MIA"* as "a member of the Armed Forces or civilian employee of the United States who, as a result of service during the period from September 2, 1945, to August 21, 1991, was at any time classified as a prisoner of war or missing-in-action and whose person or remains have not been returned to United States control and who remains unaccounted for." Act of Oct. 5, 1994, 1994 U.S.S.C.A.N. (108 Stat.) 2839 (emphasis added).

termination for purposes of subsection 54.203(a) of the Education Code.[5] We are thus obliged to conclude that, as of the date of issuance of this opinion, the legislature has not determined the termination date of the Cold War, and as a result, all active military service from June 27, 1950, until the present may be applied to the purpose of qualifying a "veteran," as described in section 54.203, for the tuition and fee exemptions granted therein.[6]

You also ask "[w]hat fees and charges are included in the statutory exemption." Specifically, there seems to be confusion regarding the meaning of "student services fees" in section 54.203. Section 54.513(b) of the Education Code provides that

> [s]ubject to Section 54.514 of this subchapter[7] and subsections (j) and (k)[8] of this section, the board of regents of The University of

---

[5]According to *Bartlett's Familiar Quotations*, the term "cold war" was first used by Bernard Baruch in 1947. BARTLETT'S FAMILIAR QUOTATIONS 729 (15th Ed. 1980). In a speech before a committee of the United States Senate in 1948, Mr. Baruch declared that "[w]e are in the midst of a cold war which is getting warmer." *Id.*

The *Oxford English Dictionary* defines "cold war" as

> hostilities short of armed conflict, consisting in threats, violent propaganda, subversive political activities, or the like *spec.* those between the U.S.S.R. and the western powers after the 1939-45 war.

OXFORD ENGLISH DICTIONARY 462-63 (2d ed. 1989). Ms. Keener, referred to on page two above as general counsel for the Department of Veterans Affairs, explains in her brief the impediments to relying on such an amorphous term:

> We suggest that the term is one of media creation which, through usage, became commonly associated with the ideological conflict and economic, political, and military rivalry between the United States, as well as other Western democracies, and the former Soviet Union and Eastern bloc countries. It roughly covers the period beginning with Prime Minister Winston Churchill's famous 'Iron Curtain' speech at Westminster College, Fulton, Missouri on March 5, 1946, and ending with the fall of the so-called 'Berlin Wall' on November 19 [sic], 1989. As such, it may be seen to overlap this century's more recent 'hot war' periods designated above.

Letter from Mary A. Keener, Esq., United States Department of Veterans Affairs (Apr. 28, 1995) (on file with this office).

[6]Subsection (a) of section 54.203 applies to military service during the "Cold War," that is, since January 31, 1955, only if the individual has served for more than 180 days, exclusive of training; no minimum period of service is required if the person served during the "national emergency" that existed from June 27, 1950, until January 31, 1955. Educ. Code § 54.203(a).

[7]Section 54.514 establishes a "student fees advisory committee," whose purpose it is "to advise the administration of The University of Texas at Austin on the type, level, and expenditure of compulsory fees for student services collected at the university under Section 54.513 of this subchapter." *Id.* § 54.514.

> Texas System may charge and collect from students registered at The University of Texas at Austin fees to cover the cost of student services that the board considers necessary or desirable in carrying out the educational functions of the university. [Footnotes added.]

"Student services" is defined in subsection (a) of section 54.513 to include

> textbook rentals; recreational activities; health, hospital, and other medical services; group hospitalization; automobile parking privileges; intramural and intercollegiate athletics; artists and lecture series and other cultural entertainment; debating and oratorical activities; student publications; student government; student fees advisory committee; student transportation services; and any other student activities and services specifically authorized and approved by the board; the term does not include services for which a fee may be charged under the specific authority of any other section of this code.

Clearly, a fee for any of the services or activities listed in subsection (a) constitutes a "student services" fee, and under the terms of section 54.203(a), an eligible veteran is not exempt from payment of such fee. Section 54.513(c) authorizes the board of regents to determine whether "fees for a particular student service [are] voluntary or compulsory."[9] With regard to *compulsory* fees, subsection (j) provides that their total "charged under this section to students for any semester or summer session may not exceed $150."

Finally, you suggest that the exemption for veterans provided by section 54.203(a) does not include fees authorized under chapter 55 of the Education Code. That chapter relates to permissible methods for financing permanent improvements to a public university. Section 55.17 authorizes a board of regents to pledge "building use fees" toward the payment of bonds, and section 55.16 allows a board to impose "charges" upon "students and others for the occupancy, services, use, and/or availability of all or any of its property, buildings, structures, activities, operations, or other facilities." In Attorney General Opinion H-37 (1973), this office declared that the exemption for veterans created by section 54.203(a) includes those fees and charges imposed under chapter 55. In a subsequent opinion, that result was affirmed. Letter Advisory No. 59 (1973). Thus, veterans are exempt from all charges authorized under chapter 55.

---

(footnote continued)

[8]Subsection (k) permits the use of general revenue funds, under particular circumstances, "to support the services and activities provided for in this section." *Id.* § 54.513(k).

[9]Section 54.513 defines "compulsory fee" as "a fee that is charged to all students enrolled in the university." *Id.* § 54.513(a)(2). A "voluntary fee," on the other hand, is "a fee that is charged only to those students who make use of the student service for which the fee is established." *Id.* § 54.513(a)(3).

In summary, we conclude that veterans qualifying for the various fee exemptions under section 54.203 are *not* exempted from the payment of (1) property deposit fees; (2) charges relating to lodging, board, or clothing; (3) compulsory student services fees as described in and limited by section 54.513(a)(2) and (j), that is, up to a maximum of $150 per semester or summer session; and (4) all voluntary student services fees as described in section 54.513(a)(3). Qualifying veterans are exempt from all other fees and charges.

## S U M M A R Y

All persons honorably discharged from the armed forces of the United States since January 31, 1955, who served on active duty for more than 180 days, exclusive of training, are entitled to exemption from the payment of all fees and charges imposed upon students by The University of Texas at Austin, except (1) property deposit fees; (2) charges related to lodging, board, and clothing; (3) voluntary student services fees as described in section 54.513(a)(3) of the Education Code; and (4) compulsory student services fees as described in and limited by section 54.513(a)(2) and (j) of the Education Code.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General